UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

GARY TYRELL,

                              Petitioner,

                v.                              9:11-CV-1371
                                                          (GLS)
HAROLD D. GRAHAM,

                              Respondent.

_____

APPEARANCES:                              OF COUNSEL

GARY TYRELL
09-A-0878
Petitioner, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ERIC T. SCHNEIDERMAN        PRISCILLA I. STEWARD, ESQ.
New York State Attorney General        Ass't Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

GARY L. SHARPE
Chief United States District Judge

## DECISION AND ORDER

## I. INTRODUCTION

      Petitioner Gary Tyrell, appearing pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he raises the following grounds for relief: (1) the evidence was insufficient; (2) he was denied the right to a fair trial because the trial court permitted the prosecutor to admit evidence that petitioner belonged to a gang; (3) the trial court improperly discharged a sworn juror; and (4) the state courts unreasonably applied Supreme Court precedent in denying petitioner's "Fourth Amendment search and seizure

claims." Dkt. No. 1, Petition ("Pet.") at 6-9; Dkt. No. 7-1, Respondent's Memorandum of Law ("R. Mem.") at 1, 15. Respondent has filed an answer to the petition, a memorandum of law, and the relevant state court records. Dkt. No. 7, Answer; Dkt. No. 7-1, R. Mem.; Dkt. No. 8, State Court Records. For the reasons that follow, the petition is denied and dismissed.

## II.   BACKGROUND

Petitioner challenges a 2009 judgment of conviction in Albany County Court, following a jury trial, of second degree attempted murder, first degree assault, two counts of first degree robbery, second degree robbery and second degree criminal possession of a weapon (N.Y. PENAL LAW §§ 110.00/125.25(1); 120.10(1); 160.15(1), (2); 160.10(2)(b); 265.03(3)). Dkt. No. 1, Petition ("Pet.") at 2; R. Mem. at 1. The Appellate Division, Third Department, briefly summarized the facts of this case:

> On the evening of May 25, 2007, Michael Brown was shot in the chest and leg and money was forcibly taken from him in his home in the City of Albany after he was unable to pay his drug supplier, Nakia Rose, a large sum of money that Rose had come to collect for previously delivered drugs. Brown described his assailants to Albany police who responded to the scene; he reported that they were armed and driving a black BMW X5 SUV with chrome rims, likely headed south. An officer safety alert was issued for the car and assailants, who were stopped by State Troopers in the described vehicle at about 8:12 p.m. on the New York State Thruway, southbound. When State Police confirmed that the vehicle occupants-defendant and Rose-matched the victim's more detailed physical and clothing description of the assailants provided to the Albany police at the hospital, the suspects were taken to the State Police barracks in the City of Kingston, Ulster County. Albany police detectives investigating the shooting arrived around 10:20 p.m., provided Miranda warnings and questioned both suspects; defendant admitted having been in Albany with Rose, but solely for the purpose of bringing a female acquaintance there. The suspects were taken back to Albany and placed under arrest the next morning after the victim identified them. A search of the vehicle disclosed, in a hidden compartment, two handguns, cash, cellular phones and other evidence.
>
> Defendant and Rose were jointly indicted and, after an unsuccessful suppression hearing, they were tried separately. Rose was convicted of first

>  degree assault, first and second degree robbery and other crimes, and acquitted of attempted murder; we affirmed (*People v Rose*, 72 AD3d 1341 [2010]). After defendant's jury trial, at which Brown identified him as the shooter and the testimony was substantially indistinguishable from that against Rose, defendant was convicted of attempted murder in the second degree, assault in the first degree, robbery in the first degree (two counts), robbery in the second degree and criminal possession of a weapon in the second degree.

*People v. Tyrell,* 82 A.D.3d 1352, 1352-53 (3d Dep't. 2011). The specific facts are known to the parties and will be repeated only to the extent necessary to address petitioner's claims.

On February 13, 2009, petitioner was sentenced, as a predicate felon, "to an aggregate prison term of 25 years to life, with five years of postrelease supervision[.]" *Tyrell*, 82 A.D.3d at 1353; Dkt. No. 8-15, Sentencing Transcript, Feb. 13, 2009. He appealed to the Appellate Division, Third Department, arguing that (1) his suppression motion was improperly denied because the police seized him without probable cause; (2) the evidence was insufficient and the verdicts were against the weight of the evidence; (3) the trial court improperly admitted evidence that he was a gang member; and (4) the trial court improperly replaced a juror with an alternate juror. Dkt. No. 8-2, Appellant's Brief. The Appellate Division affirmed. *Tyrell*, 82 A.D.3d at 1352-56. The New York Court of Appeals denied leave to appeal on July 18, 2011. Dkt. No. 8-6, Certificate Denying Leave; *Tyrell,* 17 N.Y.3d 810 (2011).

Petitioner also moved for a "de-novo appeal, writ of Coram Nobis, or reargument," in the Appellate Division, arguing that the court unreasonably applied Supreme Court precedent when it denied his Fourth Amendment claim. Dkt. No. 8-7, Notice of Motion at 1. On December 2, 2011, the Appellate Division denied the motion. Dkt. No. 8-8, Decision and Order on Motion.

This action followed.

3

**III.   DISCUSSION**

    **A.   Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Cullen v. Pinholster*,    U.S.    , 131 S. Ct. 1388, 1398, 1400 (2011) (citing 28 U.S.C. §§2254(d)(1), (2)); *Premo v. Moore*,    U.S.    , 131 S. Ct. 733, 739 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  The AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*,    U.S.    , 131 S. Ct. 1305, 1307 (2011) (per curiam) (quoting *Renico v. Lett*,    U.S.    , 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted)).  Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Id.* at 473.

    **B.   Sufficiency of the Evidence**

Petitioner argues in Ground One of his petition that the evidence was insufficient to prove his guilt because the only evidence against him was the testimony of the victim, Brown,

"an admitted drug dealer," who testified petitioner shot him because he did not "pay a drug debt." Pet. at 6. Petitioner further asserts that other witnesses were not present "at the crime" but gave "a description of people fleeing the scene." *Id.*

On direct appeal, petitioner alleged that the evidence was insufficient to sustain his conviction for attempted second degree murder because there was no evidence that he intended to kill Brown. Dkt. No. 8-2, Appellant's Brief at 17-18. He also argued that the evidence was insufficient to sustain the remaining convictions because "the evidence merely placed [him] at the scene of the crime and in the vehicle driven by the co-defendant," and the victim's testimony was "unworthy of belief" because he was a "confessed drug dealer whose testimony regarding his own criminal activity and associations was vague," and he "gave confusing, evasive and conflicting testimony[.]" *Id.* at 18. Finally, petitioner complained that the state "relied on the testimony of a jail-house informant seeking to take advantage of his knowledge of the legal system to obtain a favorable parole determination." *Id.* The Appellate Division's rejection of these arguments was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *Fiore v. White*, 531 U.S. 225, 228-29 (2001) (per curiam); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). Evidence is sufficient to support a conviction whenever, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Matthews*,    U.S.    , 132 S. Ct. 2148,

5

2152 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319. "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable." *Parker*, 132 S. Ct. at 2152 (quoting *Cavazos v. Smith*, ___ U.S. ___, 132 S. Ct. 2, 4 (2011) (per curiam) (internal quotation marks omitted). "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)).

Under New York law, to sustain his conviction for attempted second degree murder, the state had to prove that petitioner had the intent to cause Brown's death, and engaged in conduct intended to effect Brown's death. N.Y. PENAL LAW §§110.00/125.25(1). For first degree assault, the state had to prove that petitioner intended to cause "serious physical injury" to Brown and that he did so by using a "deadly weapon," in this case a loaded handgun. N.Y. PENAL LAW §120.10(1). "Serious physical injury" is injury that "creates a substantial risk of death" or which causes "protracted impairment of health." *Id.* at § 10.00(12). Intent may be inferred from the circumstances, including the actions of the accused, and it may be proven by direct or circumstantial evidence. *Stone v. Stinson*, 121 F. Supp. 2d 226, 247 (W.D.N.Y. 2000); *People v. Price*, 35 A.D.3d 1230, 1231 (4th Dept. 2006), *lv. denied* 8 N.Y.3d 926 (2007).

To prove petitioner's guilt of the two first degree robbery charges, the state had to prove that petitioner forcibly stole property from Brown, and that during the course of the crime or immediate flight therefrom, he or a co-defendant caused serious physical injury to Brown, N.Y. PENAL LAW §160.15(1), and that petitioner was armed with a deadly weapon. *Id.* at §160.15(2). For second degree robbery, the People had to prove that petitioner forcibly stole property from Brown, and that during the course of the crime or immediate flight therefrom, he or his co-defendant displayed what appeared to be a pistol, revolver, or other firearm. *Id.* at 160.10(2)(b). Finally, to prove his guilt of second degree criminal possession of a firearm, the state had to prove that petitioner possessed a loaded firearm not in his home or place of business. N.Y. PENAL LAW §§265.03(3).

In this case, the Appellate Division held that petitioner's "conduct in shooting Brown repeatedly at close range with a semiautomatic handgun, and his confession that he operated as the gang's shooter, used hollow-point bullets to avoid forensic traces and should have used a stronger weapon to ensure the victim's demise, fully support the jury's conclusion that defendant intended to kill Brown and engaged in conduct that tended to effect Brown's death and, thus, its guilty verdict of attempted murder in the second degree." *Tyrell*, 82 A.D.3d at 1355. Those findings are supported by the record evidence at trial, and petitioner has not rebutted the presumption of correctness to which the Appellate Division's findings are entitled. *See* Trial Tr. at 258-65, 355-60, 438-39, 448-51, 512, 592-94, 624-26, 629, 675-89, 808-43, 715-29, 767-68, 795-843.[1]

The Appellate Division also rejected petitioner's arguments that Brown was not worthy

---

[1] The trial transcript may be found at Dkt. Nos. 8-13 through 8-15.

7

of belief, and that "the evidence merely placed [him] at the scene of the crime and in the vehicle driven by [Rose] and that it failed to credibly support the assault, robbery or weapon possession charges." *Tyrell*, 82 A.D.3d at 1355.  The Appellate Division summarized Brown's testimony at trial:

> Brown testified that he arranged to meet Rose at a store near his house; defendant, who he did not know, was with Rose, and they drove the BMW to Brown's house. When Brown was unable to pay Rose the money due for consigned drugs because his house had been reportedly burglarized the night before, defendant ordered Brown to lie face down on the floor and demanded that he turn over his money; Brown rolled over and complied, and defendant also removed some cash from Brown's pockets while Rose pointed a handgun at him. Rose then urged defendant, armed with a 9 millimeter handgun, to shoot Brown in the head, and defendant then shot Brown several times, striking his leg and chest/arm area, and the assailants fled.

*Tyrell*, 82 A.D.3d at 1354; *see* Trial Tr. at 808-843.  The court then found that Brown's testimony was "consistent with the information and description of the assailants given to the police, the medical testimony, cell phone records, the ballistics and shell casings evidence, and the secreted guns recovered from the BMW," that Brown's testimony was "in accord with the testimony of neighbors who observed the assailants arrive with Brown and then depart." *Id.*; *see* Trial Tr. at 448-51, 592-95, 624-26, 629, 675-87, 853-54.  The Appellate Division further added that Brown's account was further corroborated by a jail inmate called to testify for the state, "who defendant befriended and to whom he confessed his role in this shooting as the self-described "wetman" (shooter) or collector for a gang that was engaged in selling marihuana." *Id.*; *see* Trial Tr. at 715-25, 767-68.

As the Appellate Division pointed out, "the inconsistencies or shortcomings in Brown's (and the inmate's) testimony were fully explored for the jury and did not concern defendant's identity as the shooter or the details of the shooting." *Tyrell*, 82 A.D.3d at 1355.  The jury

was entitled to believe Brown's testimony, "despite his criminal history and the immunity conferred by the US Attorney for his drug selling activity and other matters." *Id.* (citations omitted); *see United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." ); *Roman v. Filion*, No. 1:04-CV-8022, 2005 WL 1383167 at *32 (S.D.N.Y. 2005) (jury entitled to accept eyewitness testimony even though it contained inconsistencies). Importantly, this court may not reassess the jury's finding of credibility. *Roman*, 2005 WL 1383167 at *32.

Under the facts and circumstances of this case, it was not irrational to have found that each element of each crime for which petitioner was convicted was proven beyond a reasonable doubt. The Appellate Division did not act contrary to, or unreasonably apply, Supreme Court precedent in rejecting petitioner's sufficiency arguments. Ground One of the petition is therefore denied and dismissed.

**C.    Trial court's admission of evidence of petitioner's membership in a gang**

Petitioner claims in Ground Two of his petition that the trial court improperly admitted evidence at trial that he was a "wet man," or a person who shot people for a gang, because that evidence "made the jury feel" that he was a "public safety threat that should be removed from society" (the prior bad acts claim). Pet. at 7. Respondent argues that this claim is unexhausted and procedurally defaulted because petitioner did not fairly present it in federal constitutional terms to the state courts. R. Mem. at 17, 27. This court agrees.

An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(I), (ii). To satisfy the exhaustion

requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1981); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

> A petitioner may establish that a federal claim was raised in state court by:
>
>> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Carvajal*, 633 F.3d at 104 (quoting *Daye v. Atty. Gen. of the State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)). Finally, the petitioner must have used the proper procedural vehicle so that the state court may pass on the merits of petitioner's claims. *Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985); *Barton v. Fillion*, No. (03-CV-1377 (DNH/GJD), 2007 WL 3008167 at *5 (N.D.N.Y. Oct. 10, 2007).

Petitioner raised his prior bad acts claim on direct appeal, and sought leave to appeal the denial of that claim in the New York Court of Appeals. His arguments, however, were couched solely in terms of New York law. Dkt. No. 8-2 at 19-20. Petitioner did not point to any federal constitutional provision that might have alerted the state courts that his claim was federal in nature. *Carvajal*, 633 F.3d at 104. He did not invoke "pertinent federal cases employing constitutional analysis," nor did he seek support for his contention from "state

10

cases employing constitutional analysis in like fact situations." *Id.* (quoting *Daye*, 696 F.2d at 194). The Appellate Division evidently viewed this claim as one based in New York law. *Tyrell*, 82 A.D.3d at 1355. Petitioner's prior bad acts claim is therefore unexhausted.

This claim is also procedurally defaulted because there is no remaining avenue by which petitioner could properly exhaust it. He cannot now file a direct appeal in order to exhaust this claim because a defendant is "entitled to one (and only one) appeal to the Appellate Division." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). The facts that would support this claim were apparent on the trial record, and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10 (2)(c)); *see Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance pursuant to the exhaustion requirement for federal habeas."), *cert. denied* 129 S. Ct. 130 (2008); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying section 440.10 (2)(c) to claims raised for the first time in federal habeas petition).

Accordingly, petitioner's prior bad acts claim is deemed exhausted but procedurally defaulted absent a showing of cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*,    U.S.   , 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson,* 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner has not alleged or established cause for failing to properly exhaust these

11

claims in federal constitutional terms in state court, and he has not advanced any new evidence that he is actually innocent of the crimes for which he was convicted, or that the failure to review his claim would result in a fundamental miscarriage of justice. *House,* 547 U.S. at 536-39; *Schlup,* 513 U.S. at 327. Petitioner's prior bad acts claims is therefore procedurally defaulted.

Even if petitioner's claim was not defaulted, no habeas relief would issue. A state court's decision to admit evidence of a defendant's uncharged crimes or other bad acts under *People v. Molineux*, 168 N.Y. 264 (1901), is an evidentiary ruling based on state law. *Sierra v. Burge*, No. 1:06-CV-14432, 2007 WL 4218926 at *5 (S.D.N.Y. Nov. 30, 2007) (citing *Roldan v. Artuz*, 78 F. Supp. 2d 260, 276-77 (S.D.N.Y. 2000) ("A habeas claim asserting a right to relief on *Molineux* grounds must rise to the level of a constitutional violation ... because *Molineux* is a state law issue.") (citations omitted)). Evidentiary questions are generally matters of state law and raise no federal constitutional issue for habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Mannix v. Phillips*, 619 F.3d 187, 199 (2d Cir. 2010) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. [S]tate courts are the ultimate expositors of state law.") (internal quotation marks and citations omitted).

Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that there was an error by the state court, and that the "state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process," which is one of "fundamental fairness," and is "defined . . . very narrowly." *Evans v. Fischer*, 712 F.3d 125,

12

133 (2d Cir. 2013) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Under New York law, evidence of prior crimes or bad acts is admissible to prove a specific crime if it tends to establish motive, intent, absence of mistake or accident, a common scheme or plan between the commission of two or more crimes, or the identity of the person charged with the commission of the crime. *Molineux*, 168 N.Y. at 293; *see Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. Sept. 27, 2007) (stating that New York courts frequently admit evidence of prior bad acts "as background material" and to "complete the narrative of events.") (citing *People v. Till*, 87 N.Y.2d 835, 836-37 (1995) ("[S]uch evidence may be allowed when, as here, it bears on the motive and state of mind in relation to an avoidance of apprehension during immediate flight from a crime and is found to be 'needed as background material' or to 'complete the narrative of the episode' " ); *Neloms v. Brown*, No. 1:05-CV-8162, 2007 WL 809703 at *9 (S.D.N.Y. Mar. 16, 2007) ("The evidence [gun, stun gun and duct tape] that Neloms had just engaged in a robbery was plainly relevant to the question of his intent when he possessed the gun."); *Yapor v. Mazzuca*, No. 1:04-CV- 7966, 2005 WL 894918 at *20 (S.D.N.Y. Apr. 19, 2005) (evidence of uncharged crimes or prior bad acts is admissible to show intent), *adopted* 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005).

In this case, as the Appellate Division found, the trial court applied New York law "in a manner that was not contrary to or an unreasonable application of United States law or the Constitution." *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (holding that the trial court reasonably applied New York law when it admitted evidence of Vega's "uncharged crimes and 'Enforcer' tattoo."). The Appellate Division explained that

13

> [t]his evidence stemmed from the confession to the testifying inmate in which [petitioner] explained his role and motives in this very shooting. As such, the inmate's testimony was a "narrative description of the crimes charged [which] necessitate[d] mention of the uncharged criminal conduct [and bad acts, because they] . . . are inextricably interwoven. Those admissions were admissible as a matter of law as they were probative of [petitioner's] specific intent and motive in this shooting, as well as the manner in which he accomplished these crimes and his identity as the shooter, all disputed issues.

*Tyrell*, 82 A.D.3d at 1355. The Appellate Division further found that the court properly weighed the probative value of the evidence against its possible prejudicial effect, and that the trial court "separately considered each item in the People's Molineux proffer, admitting only those directly related to these crimes and excluding those concerning unrelated gang activity or details. *Id.* at 1355-56.[2] The Appellate Division's decision affirming the trial court's admission of evidence that petitioner was a gun man for a gang - the result of his own confession to his fellow inmate - did not violate any state evidentiary rule. *Charles*, 516 F. Supp. 2d at 217; *Plummer*, 36 N.Y.2d 161.

Even if the court improperly admitted the portion of petitioner's jailhouse confession referring to his role in a gang, this evidence was not "so extremely unfair that its admission violate[d] fundamental concepts of justice." *Vega*, 669 F.3d at 126 (quoting *Dowling*, 493 U.S. at 352 (internal quotation marks omitted). Petitioner's procedurally defaulted and meritless prior bad acts claim is denied and dismissed.

### C. Petitioner's juror discharge claim

In Ground Three, petitioner argues that the trial court improperly discharged a sworn

---

[2] To the extent that petitioner claims that the trial court improperly concluded that the probative value of this evidence was outweighed by its prejudicial impact, that claim also fails because that determination is "left to the sound discretion of the trial judge." *Yapor*, 2005 WL 894918, at *18 (citing *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)).

14

juror, Charles Custer, over trial counsel's objection, without giving the juror enough time to return to court (the juror discharge claim). Pet. at 9. Respondent argues that this claim should also be deemed exhausted but procedurally defaulted because petitioner failed to fairly present it to the state courts in federal constitutional terms. R. Mem. at 17, 31.

Petitioner challenged the trial court's decision to discharge juror Custer on direct appeal, but relied solely on state law. He focused his argument on the requirements of CPL §270.35, which governs the discharge of jurors and their replacement with alternates in New York, and claimed the trial court failed to follow the statute. Dkt. No. 8-2 at 20-24. Petitioner did not cite any federal constitutional provision or case that might have alerted the state courts that his claim was federal in nature. *Carvajal*, 633 F.3d at 104 (quoting *Daye*, 696 F.2d at 194). The Appellate Division also pointed solely to state statutory and case law when denying the claim. *Tyrell*, 82 A.D.3d at 1356. This court agrees that petitioner did not fairly present his juror discharge claim to the state courts in federal constitutional terms, and it is therefore unexhausted.

This claim is also procedurally defaulted because there is no remaining avenue by which petitioner could fairly present it in federal constitutional terms. *Carvajal*, 633 F.3d at 104-105; *Clark,* 510 F.3d at 390; *Aparicio*, 269 F.3d at 91. To obtain habeas review of this claim, petitioner would have to show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House*, 547 U.S. at 536-39; *Schlup*, 513 U.S. at 327. Petitioner has not alleged or established cause for failing to properly exhaust this claim in federal constitutional terms in state court, and he has not advanced any new evidence that he is actually innocent. Pet. This claim is therefore

15

procedurally defaulted and subject to dismissal. But even if this claim was not defaulted, no relief would issue.

"Habeas courts in this Circuit have routinely rejected claims that a trial court improperly delegated its duties under C.P.L. § 270.35 on the basis that such claims involve only a matter of state procedural law and do not present a federal constitutional question." *Linnen v. Poole*, 766 F. Supp. 2d 427, 469-70 (W.D.N.Y. 2011) (citing cases). As the Appellate Division in this case found, the trial court properly exercised its discretion under CPL § 270.35(2)(a), which governs the dismissal of a sworn juror. That section authorizes the court to dismiss a sworn juror if it determines that the juror will be unable to serve due to some incapacity or "for any other reason is unavailable for continued service [.]" *Id.* Dismissal is authorized as soon as the trial court determines through a "reasonably thorough inquiry" that the juror will not appear "within two hours of the time set by the court for the trial to resume [.]" *Id.* The statute also requires that the parties be given an opportunity to be heard, and that the court's reasons for discharging a juror must be placed on the record. *Id.* at § 270.35(2)(b).

The record shows that on December 12, 2008, before closing arguments, the trial court informed the parties that he spoke to juror Custer, who was at the radio station where he worked. Juror Custer informed the court that he could not leave the station because he was running live coverage of a weather emergency caused by freezing rain and sleet, which caused power outages and school closings, and asked to be released. Trial Tr. at 934-36. Petitioner's counsel wanted to wait for juror Custer to be available, and the trial court called Custer a second time to ask if he would be available to participate in the trial within two hours and, if so, the court would wait for him. *Id.* at 937-38. Juror Custer could not come to the

16

court within two hours, and the trial court discharged him and substituted the first alternate juror. *Id.* at 938-39

The Appellate Division affirmed, finding "no error or abuse of discretion in County Court's discharge" of juror Custer, "after a thorough inquiry of the absent juror disclosed that he was unavailable to continue serving and there was no likelihood that he would be appearing within two hours." *Tyrell*, 82 A.D.3d at 1356 (citing CPL §270.35 (1), (2); *People v. Jeanty*, 94 N.Y.2d 507, 511, 513-514 (2000); and *People v. Ballard*, 51 A.D.3d 1034, 1035-1036 (2008), *lv denied* 11 NY3d 734 (2008)).  The Appellate Division explained that the trial court followed the dictates of the statute because it "spoke to the juror twice on the telephone, once with counsel present who had an opportunity to be heard, learning that, due to the inclement winter weather and widespread power outages, he needed to oversee emergency storm coverage for his radio station employer and could not appear." *Id., Hughes v. Phillips*, 457 F. Supp. 2d 343, 368 (S.D.N.Y. 2006) ("a trial court's finding that a sworn juror was not fit for further service is a factual determination that is entitled to a presumption of correctness unless unsupported by the record.").

In sum, the trial court's decision to discharge juror Custer was not contrary to or an unreasonable application of clearly established Supreme Court precedent.  This procedurally defaulted claim is also without merit, and it is denied and dismissed.

### D.     Fourth Amendment claim

Petitioner alleges in Ground Three of his petition that the state courts unreasonably applied Supreme Court precedent when they denied his Fourth Amendment claims.  Pet. at 9. In *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnote omitted), the Supreme Court held

that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief."). Following *Stone*, review of Fourth Amendment claims in habeas petitions is permissible only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

    New York has a corrective procedure for Fourth Amendment violations, which is facially adequate. *Capellan*, 975 F.2d at 70 n. 1. Under New York's Criminal Procedure Law ("CPL") § 710, a defendant may move to suppress evidence he claims was unlawfully obtained when he has "reasonable cause to believe that such [evidence] may be offered against him in a criminal action[.]" *Huntley v. Superintendent, Southport Corr. Fac.*, No. 9:00-CV-191 (DNH/GHL), 2007 WL 319846 at *7 (N.D.N.Y. Jan. 30, 2007) (quoting N.Y. CRIM. PROC. §710.20); N.Y. CRIM. PROC. §710.20(1) (stating that a defendant may move to suppress evidence on the ground that it "[c]onsists of tangible property obtained by means of an unlawful search and seizure under circumstances precluding admissibility thereof[.]").

    Here, petitioner availed himself of the state's corrective procedure by litigating his motion to suppress all of the evidence against him "on the premise that he was illegally

18

detained by State Police resulting in a de facto arrest without probable cause," *Tyrell*, 82 A.D.3d at 1353-54, and by appealing the denial of the motion. Id., *lv. denied* 17 N.Y.3d 810 (2011). Accordingly, New York provided corrective procedures to address Petitioner's Fourth Amendment claim. *Graham*, 299 F.3d at 134; *see Ferron v. Goord*, 255 F. Supp. 2d 127, 131-32 (W.D.N.Y. 2003) (holding that petitioner's "various applications before the trial and appellate state courts challenging the search warrant clearly show that he was given an opportunity for a 'full and fair' litigation of his Fourth Amendment claims.").

Nor has there been an unconscionable breakdown in the state's corrective process. An "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd* 852 F.2d 59 (2d Cir. 1988); *accord Capellan*, 975 F.2d at 70. The focus of the inquiry regarding whether there has been an "unconscionable breakdown" must be on "the existence and application of the *corrective procedures* themselves" rather than on the "*outcome* resulting from the application of adequate state court corrective procedures[.]" *Capellan*, 975 F.2d at 71 (emphasis in original); *Blackshear v. Donnelly*, No. 9:03-CV-450 (LEK/VEB), 2008 WL 150414 at *11 (N.D.N.Y. Jan. 14, 2008) (same).

Petitioner's disagreement with the outcome of the state courts' ruling "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72; *see Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) ("Stone v. Powell ... holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts."), *cert. denied* 434 U.S. 1038 (1978). Even if the state courts erred in their analysis of the merits of petitioner's Fourth Amendment

19

claims, that is not enough to warrant habeas review. *Gates*, 568 F.2d at 840; Ca*p*ellan, 975 F.2d at 71; *see Crenshaw v. Superintendent, Five Points Corr. Fac*., 372 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (finding petitioner's "assertions that the state courts were incorrect and defense counsel incompetent do not constitute the sort of 'breakdown'" that would permit habeas review of a Fourth Amendment claim).

Petitioner's Fourth Amendment claims are barred by *Stone* and are dismissed.

## IV.   CONCLUSION

**WHEREFORE**, it is

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED** in its entirety and **DISMISSED**; and it is further

**ORDERED** that no certificate of appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2);[3] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 10, 2013
         Syracuse, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

---

[3] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("§ 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right'"); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation") (emphasis in original) (citation omitted)).